UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONI LYN SPARCK,                                    Case No. 11-10521

           Plaintiff,                         Patrick J. Duggan
v.                                                  United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                    Michael Hluchaniuk
                                                    United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 16)**

**I.    PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

On February 9, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Patrick J. Duggan referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 11, 16).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on March 12, 2007, alleging that she

became unable to work on February 24, 2006. (Dkt. 7-6, Pg ID 132). The claim

was initially disapproved by the Commissioner on July 12, 2007. (Dkt. 7-4, Pg ID

74-77). Plaintiff requested a hearing and on September 24, 2009, plaintiff

appeared with before Administrative Law Judge (ALJ) Elliott Bunce, who

considered the case *de novo*. In a decision dated November 6, 2009, the ALJ

found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 31-42). Plaintiff requested

a review of this decision on November 18, 2009. (Dkt.7-2, Pg ID 28). The ALJ's

decision became the final decision of the Commissioner when the Appeals

Council, on December 6, 2010, denied plaintiff's request for review. (Dkt. 7-2, Pg

ID 23-25); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 43 years of age at the time of the most recent administrative

hearing. (Dkt. 7-2, Pg ID 40). Plaintiff's relevant work history included

approximately 9 years as a cashier, cook, and production worker. (Dkt. 7-6, Pg ID

137). In denying plaintiff's claims, defendant Commissioner considered a head

injury, right ankle, depression, and concentration as possible bases of disability. (Dkt. 7-6, Pg ID 136).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 24, 2006 through June 30, 2009. (Dkt. 7-2, Pg ID 36). At step two, the ALJ found that plaintiff's residual effects of a fractured ankle were "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 7-2, Pg ID 38). At step four, the ALJ found that plaintiff could not perform any past relevant work. (Dkt. 7-2, Pg ID 40). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 7-2, Pg ID 41).

B.    Plaintiff's Claims of Error

Plaintiff makes two primary claims of error. First, she claims that the ALJ erred in not finding that she suffered from a severe mental impairment. Second, plaintiff argues that the ALJ formulated an inaccurate hypothetical based on the assessment of plaintiff's credibility and the medical evidence of record. More specifically, plaintiff contends that the ALJ improperly discounted the examination and diagnoses of Dr. Menendes and opinions of Dr. Hill by

Report and Recommendation
Cross-Motions for Summary Judgment
*Sparck v. Comm'r*; Case No. 11-10521

concluding "I am more persuaded by the treatment records and the claimant's ability to do her rent-collecting job.  Based on this evidence, it is reasonable to find that the claimant does not have a severe mental impairment that would preclude the ability to perform unskilled work."  (Tr. 15-16).  According to plaintiff, the ALJ did not properly and fully evaluate the treatment notes of her treating psychologist and therapist from List Psychological Services in their entirety.  Plaintiff claims that the ALJ incorrectly concluded that she did not require the use of an assistive device for walking, ignoring the supportive medical evidence of record, and improperly rejected the opinions of her treating physical therapist.

     C.    <u>The Commissioner's Motion for Summary Judgment</u>

According to the Commissioner, plaintiff's argument regarding her mental impairments fails for two reasons.  First, the Commissioner points out that plaintiff prevailed at step two of the sequential evaluation process.  Second, the Commissioner contends that substantial evidence supports the ALJ's step two decision, and for good measure, the ALJ accounted for any limiting effects arising from any mental impairment.  According to the Commissioner, because one severe impairment alone is enough to proceed to step three (which occurred here), it is not relevant whether the ALJ found additional "severe" impairments at step two. The Commissioner relies on Sixth Circuit authority explaining that it was

unnecessary to consider a claim that the ALJ had omitted a severe impairment at step two, explaining that even if present, such an omission "could not constitute reversible error" because the ALJ had found the claimant met the requirement of a severe impairment at step two. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The Commissioner also argues that substantial evidence supports the ALJ's conclusion that her mental impairment was not severe. The August 2006 neuropsychosocial evaluation confirmed that plaintiff's learning disability predated her injury. (Tr. 249). The ALJ reasonably concluded that plaintiff's learning disability predated her alleged disability onset and had no more than minimal limitations on her ability to perform unskilled work. (Tr. 15). For example, while plaintiff complained of memory problems after her motor vehicle accident (Tr. 37, 183), Dr. Borders-Robinson's examination indicated that her recent and remote memories were intact and testing for aphasia was negative. (Tr. 186). At the neuropsychosocial evaluation, plaintiff could recall 13 of 16 words after a 20-minute delay, and when presented with choices, she could remember all 16 words. (Tr. 248). The doctor believed that plaintiff had residuals of a "mild" traumatic brain injury that would resolve with time. (Tr. 249). Plaintiff participated in therapy to address her memory complaints, and the Commissioner points out that she successfully completed that therapy in November 2006. (Tr.

259).  According to the discharge summary, plaintiff "was able to complete all tasks with 100% accuracy. She was able to complete the tasks quickly." (Tr. 259). The discharge summary also noted that plaintiff's cognitive and attention skills were within normal limits.  (Tr. 259).

The record also documents a diagnosis of depression, for which plaintiff took Cymbalta (Tr. 34-35), and received counseling.  (Tr. 391-409).  According to the Commissioner, the record also shows that the ALJ correctly determined that plaintiff's depression did not prevent her from working.  While the counselor whom plaintiff saw routinely described her as "moderately impaired," the Commissioner contends that the record suggests plaintiff made progress in therapy.  By June 2008, her weekly sessions had been reduced to monthly.  (Tr. 418).  Her counselor assigned her a GAF score of 62 in June 2008 (Tr. 418), 65 in September 2008 (Tr. 417), and 68 in December 2008 (Tr. 416). He assigned a GAF score of 68 in June 2009.  (Tr. 410).  A GAF score in this range suggests only mild symptoms or difficulties.  *See* DSM-IV-TR at 33-34.  The Commissioner points out that the ALJ cited these GAF scores, as well as her "relatively routine" treatment, in determining that plaintiff's depression did not impose "more than mild functional limitations."  (Tr. 15).

While plaintiff reported to her doctors and at the hearing that she was irritable, fatigued, depressed, slept poorly, and had poor memory, the

Commissioner asserts that these self-reported statements describe mental impairments that the ALJ himself acknowledged.  However, the Commissioner also contends that the objective medical evidence, does not corroborate the severity of the impairments that plaintiff alleges or the limiting effects plaintiff describes.  And, plaintiff does not address this objective evidence, let alone explain why it does not support the ALJ's conclusion that her mental impairments did not significantly affect her ability to perform a range of work.  Plaintiff also cites the Psychiatric Review Technique form, in which Dr. Hill noted that plaintiff had moderate difficulties or limitations in certain functional areas, but according to the Commissioner, plaintiff ignores the mental RFC assessment Dr. Hill completed.  Specifically, Dr. Hill concluded that plaintiff retained the ability to perform work activities that were "simple in nature."  (Tr. 335).   Given the objective evidence and Dr. Hill's ultimate conclusion that plaintiff retained the ability to perform work on a sustained basis, the Commissioner urges the Court to conclude that even if the ALJ should have included a mental impairment in his step-two finding, any such omission was harmless because not only does the objective medical and medical opinion evidence show that plaintiff retained the mental capacity to work, but also because the ALJ accounted for any limitations such impairments may have caused.

 The Commissioner argues that the hypothetical question properly accounted

for the limiting effects of plaintiff's physical impairment. The question asked the vocational expert to consider a person who was limited to sedentary work that allowed for a sit/stand option. (Tr. 42-43). The Commissioner points out that this limitation is consistent with Dr. Jones's limiting her to sedentary work (Tr. 216), and with Dr. LaClair, who in 2006, limited plaintiff to work that allowed for a sit/stand option and that involved lifting and carrying no more than 10 pounds. (Tr. 221, 263). Notably, Dr. LaClair imposed this restriction again in 2008, adding no repetitive operation of foot controls with the right foot. (Tr. 341, 370). In 2009, he omitted this additional restriction and again limited plaintiff to sedentary work. (Tr. 364). The Commissioner contends that the hypothetical question is also consistent with the RFC assessment conducted by Dr. Issa, the state agency physician, given that she limited plaintiff to lifting no more than 10 pounds and indicated that plaintiff required a sit/stand option. (Tr. 306). She also limited plaintiff to occasional postural activities. (Tr. 307). The Commissioner points out that the ALJ's hypothetical question was more restrictive; it limited the claimant to occasional stooping and no climbing, balancing, kneeling, crouching, or crawling at all. (Tr. 42-43).

While plaintiff objects that the ALJ noted that he did not include in the RFC finding any provision addressing plaintiff's use of an assistive device to ambulate, the ALJ asked the vocational expert whether the use of an assistive device would

eliminate any of the jobs he identified; the vocation expert said it would not.  (Tr.

43-44).  While plaintiff also notes that the physical therapist who conducted the

functional capacity evaluation concluded that plaintiff could not "functionally

weight bear" on her right ankle for more than two to three minutes, the

Commissioner points out that the ALJ's limiting plaintiff to sedentary work with a

sit/stand option addressed the therapist's concern.  Specifically, not only do the

jobs the vocational expert identified allow plaintiff to switch between sitting and

standing at will, sedentary work, like those jobs the vocational expert identified, is

performed primarily while seated.  The Commissioner also contends that,

critically, no medical source opined that plaintiff was disabled,[1] or identified

functional restrictions that would prevent plaintiff from performing the range of

sedentary work the ALJ described.

   The Commissioner also urges the Court to reject plaintiff's claims that the

ALJ erred in his credibility assessment.   The Commissioner first points out that,

contrary to plaintiff's argument, the ALJ did not predicate his credibility

_____

   [1]  Interestingly, had a treating source so opined, the ALJ would not have
credited such an opinion.  As the Commissioner often argues, whether a person is
disabled within the meaning of the Social Security Act, i.e., unable to engage in
substantial gainful employment, is an issue reserved to the Commissioner and a
physician's opinion that his patient is disabled is not "giv[en] any special
significance."  20 C.F.R. § 404.1527(e); *see Warner v.. Comm'r of Soc. Sec.*, 375
F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the
prerogative of the Commissioner, not the treating physician.") (citation and
brackets omitted).

determination solely on his own observations of plaintiff's conduct. Rather, he explained that the medical evidence and medical opinion evidence did not support plaintiff's claim of total disability. (Tr. 17-18). The ALJ placed particular reliance on Dr. LaClair, who, as explained, repeatedly stated that plaintiff could perform a range of sedentary work. (Tr. 17-18). As the ALJ explained, "In March 2007, the claimant's treating physician, P. LaClair, MD stated that the claimant had work restrictions, but she was not precluded from lifting or carrying up to 10 pounds and she required an option to sit or stand (Exhibit 5F/43). I find this assessment consistent with the treatment records and with this decision." (Tr. 17). Thus the Commissioner contends that ALJ relied on factors other than his observations of plaintiff and he cited specific reasons, including plaintiff's own treating physician's opinion, to support his finding.

The Commissioner also points out that the ALJ explained why he discounted plaintiff's testimony regarding her mental limitations. In addition to a lack of objective medical evidence, the ALJ also cited plaintiff's work as a rent collector for the past six years as evidence that she could perform unskilled work. (Tr. 18). According to the Commissioner, plaintiff's ability to perform this work properly informed the ALJ's credibility analysis. *See e.g.*, *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("The ALJ could properly determine that her subjective complaints were not credible in light of her ability to perform

other tasks.").

## III.   DISCUSSION

A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

Report and Recommendation
Cross-Motions for Summary Judgment
*Sparck v. Comm'r*; Case No. 11-10521

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Analysis and Conclusions</u>

1.    Mental impairments

The undersigned disagrees with the Commissioner that even if the ALJ erred by not finding that plaintiff's mental impairments were "severe" at step 2, that error was harmless under *Maziarz*, *supra*.  In *Maziarz*, the Sixth Circuit held where the ALJ found that one condition was not severe at step 2, because another condition was found to be severe and the analysis proceeded, the failure to find a particular condition to be severe was not reversible error.  *Id.*  at 245.  Other cases have distinguished *Maziarz*, finding reversible error where the ALJ simply did not address the disputed condition at all at step 2 and did not consider the limitations caused by the omitted impairment in subsequent steps.  *See e.g.*, *Tuck v. Astrue*, 2008 WL 474411 (W.D. Ky. 2008); *Jamison v. Comm'r of Soc. Sec.*, 2008 WL 2795740 (S.D. Ohio); *Stephens v. Astrue*, 2010 WL 1368891 (E.D. Ky 2010); *Meadows v. Comm'r of Soc. Sec.*, 2008 WL 4911243 (S.D. Ohio 2008).

Here, while the ALJ extensively examined plaintiff's claimed mental impairments, the medical evidence of record, and plaintiff's testimony regarding her mental impairments, he did not include any resulting limitations in the hypothetical questions to the VE or account for any mental impairments in the RFC.  This is so because the ALJ rejected all treating, consulting, and examining opinions that plaintiff had any mental impairments that did not predate the auto

accident.  Essentially, the ALJ concluded that because plaintiff was able to work a semi-skilled job prior to her accident despite her learning disabilities, nothing prevented her from doing sedentary work because her mental impairments were not severe.  The undersigned disagrees for the reasons set forth below and concludes that the ALJ's decision to exclude consideration of documented cognitive disorders and mental conditions is not supported by substantial evidence.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle.  20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1).  In the framework for mental impairments, this involves, for example, limitations on a plaintiff's ability to understand, carry out, and remember simple instructions.  20 C.F.R. §§ 404.1521(b)(3), 416.921(b)(3).  Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting.  20 C.F.R. § 404.1521(b).  Plaintiff is not required to establish total disability at this level of the sequential evaluation.  Rather, the severe impairment requirement is a

threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985), citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). The severity requirement is a "*de minimus* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Rogers*, 486 F.3d at 243 n. 2.

Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own

Report and Recommendation
Cross-Motions for Summary Judgment
*Sparck v. Comm'r*; Case No. 11-10521

judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other terms, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at \*14 (S.D. Ohio 2011).

The ALJ reserves the right to decide certain issues, such as a claimant's RFC. 20 C.F.R. § 404.1527(d). Nevertheless, in assessing a claimant's RFC, an ALJ must consider all relevant record evidence, including medical source opinions on the severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a). Furthermore, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at \*10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not

qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").  As the *Deskin* court explained:

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) ... [the Commissioner may not] make the connection himself."

*Deskin*, 605 F.Supp.2d at 912, quoting *Rohrgerg v. Apfel*, 26 F.Supp.2d 303, 311 (D. Mass. 1998) (internal citation omitted).

In his analysis of plaintiff's mental and cognitive impairments, the ALJ selected statements from the consulting examiner's report that seemed to suggest she was not significantly impaired.  However, this examiner (Dr. Menendes) did not reach any specific conclusions regarding plaintiff's functional limitations. Notably, however, Dr. Menendes found that plaintiff had a cognitive disorder, a recurrent major depressive disorder, and a reading disorder.  (Dkt. 7-8, Pg ID 344).

And, significantly, Dr. Menendes concluded that plaintiff was not able to manage her own funds due to "memory problems." (Dkt. 7-8, Pg ID 344-345). Dr. Hill then reviewed plaintiff's file, including all the treating records and the consulting examiner's report, and completed the PRTF. Dr. Hill also concluded that plaintiff had a cognitive disorder, a reading disorder, and major depressive disorder. Even though Dr. Hill found plaintiff only partially credible, he concluded that plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain concentration and attention for extended periods, the ability to perform activities within a schedule, maintain regular attendance and be punctual, the ability to sustain an ordinary routine without special supervision, the ability to make simple work-related decisions, and the ability to set realistic goals and make plans independently of others. (Dkt. 7-8, Pg ID 361-362). Despite these moderate limitations in some areas of understanding and memory, sustained concentration and persistence, and adaptation, Dr. Hill also concluded that plaintiff's "psychological limitations do not appear to interfere with the potential for task activities that are simple in nature" and she "retains the mental residual capacity to perform step one and step two tasks on a sustained basis." (Dkt. 7-8, Pg ID 363).

The ALJ, however, rejected Dr. Hill's opinions and concluded that he was "more persuaded by the treatment records and the claimants' ability to do her rent-

collecting job.  Based on this evidence, it is reasonable to find that the claimant

does not have a severe mental impairment that would preclude her ability to

perform unskilled work."  The ALJ does not identify the "treatment records" that

purportedly support his conclusion that Dr. Hill's conclusions are not supported by

the record.  Significantly, Dr. Hill is the only expert who offered an opinion on

both plaintiff's cognitive and mental impairments and who tied all the record

evidence together.  In the view of the undersigned, the ALJ has impermissibly

substituted his own medical judgment for that of the experts because there are no

medical opinions supporting his conclusions regarding plaintiff's mental and

cognitive limitations.  Rather, he essentially rejects all treating, examining, and

consulting opinions in the record.  The undersigned is not persuaded by the

Commissioner's argument that this is not reversible error because Dr. Hill

ultimately concluded that plaintiff could work.  Dr. Hill specifically limited

plaintiff to "tasks that are simple in nature" and concluded that she "retains the

mental residual capacity to perform step one and step two tasks on a sustained

basis."  The ALJ's RFC only limited plaintiff to unskilled sedentary work, which

does not account for the limitations recognized by Dr. Hill.

Further, it appears that plaintiff had both a "cognitive disorder" and a

"reading disorder."  While it is true that plaintiff had a pre-existing learning

disability, the ALJ does not distinguish between her post-accident traumatic brain

injury (cognitive disorder) and her pre-existing learning disability (reading

disorder). Rather, he lumps them together and concludes that if she could work

before the accident, then no mental impairment prevented her from working after

the accident. This also fails to take into account any effects of her depressive

disorder, which of course, involves managing the mental effects of chronic pain.

While the ALJ found that plaintiff's treatment (counseling and medication)

indicated only a mild depressive disorder, this does not necessarily mean it has no

effect on plaintiff's ability to function. Indeed, Dr. Hill, an expert this field,

obviously concluded that it did, illustrating the very problem with the ALJ's

analysis. This is not a typical case where there are conflicting medical opinions in

the record and the ALJ must weigh the evidence and resolve those conflicts. In

such circumstances, the "ALJ is free to resolve issues of credibility as to lay

testimony, or to choose between properly submitted medical opinions," however,

the ALJ cannot, as he did here, "substitute his own lay 'medical' opinion for that

of a treating or examining doctor." *Beck*, 2011 WL 3584468, at *14. The

undersigned is not persuaded that plaintiff's ability to "do her rent collecting job,"

which entailed having other trailer park tenants write their names on a list and

taking envelopes with checks or money orders in them for the owner to pick up, to

be a particularly persuasive basis for rejecting Dr. Hill's expert opinion.[2]  For

these reasons, this matter must be remanded for further consideration by the ALJ

of plaintiff's mental and cognitive impairments.

    2.    Physical impairments

    Unlike the ALJ's analysis of plaintiff's mental impairments, the

undersigned finds no error regarding the analysis of plaintiff's physical

impairments.  The ALJ adopted the opinion of plaintiff's treating physician

regarding her physical restrictions and ability to work and plaintiff fails to point to

any evidence in the record to suggest that this course was not appropriate.  In

addition, the ALJ properly did not give controlling weight to the opinions of

plaintiff's physical therapist because he was not an acceptable medical source

under the regulations.  *See* SSR 06-03p; 2006 WL 2329939, at *1.  Particularly

persuasive of the ALJ's treatment of the physical therapist's opinion is that Dr.

LaClair reiterated the same permanent restrictions for plaintiff after reviewing the

physical therapist's opinion (the functional capacity evaluation was performed at

Dr. LaClair's request).  (Dkt. 7-9, Pg ID 399).

--------

    [2]  The opinions of non-examining state agency medical consultants can,
under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL
2485968 (S.D. Ohio 2009).  This is so because nonexamining sources are viewed
"as highly qualified physicians and psychologists who are experts in the
evaluation of the medical issues in disability claims under the [Social Security]
Act."  SSR 96-6p, 1996 WL 374180.

Finally, there is no merit to plaintiff's suggestion that the ALJ's failure to acknowledge that she required an assistive device for walking is reversible error. While the undersigned agrees that the ALJ's conclusion is not supported by the record, the ALJ asked the VE whether the sedentary unskilled jobs identified would preclude the use of an assistive device and the answer was "no." Thus, this does not constitute reversible error.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 23, 2012          s/Michael Hluchaniuk
                               Michael Hluchaniuk
                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 23, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, Derri T. Thomas, AUSA, and the Commissioner of Social Security.

                               s/Darlene Chubb
                               Judicial Assistant
                               (810) 341-7850
                               darlene_chubb@mied.uscourts.gov